**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **In the Matter of an Application to Enforce an Administrative Subpoena of the** | ) ) ) | |
| **COMMODITY FUTURES TRADING COMMISSION,** | ) ) ) ) | |
| Applicant, | ) ) | Misc. Action No. |
| v. | ) ) | |
| **PATRICK WONSEY,** | ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM IN SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA**

On May 28, 2020, the Commodity Futures Trading Commission ("Commission" or "CFTC"), through its Division of Enforcement (the "Division"), pursuant to its statutory authority, issued a Subpoena *Duces Tecum* (the "Subpoena") to Respondent Patrick Wonsey, an individual residing in Riverview, Florida. The Division issued the Subpoena in connection with an investigation into whether Mr. Wonsey, through his entities, OneBell & Associates Inc. and/or TradeDow LLC, fraudulently solicited customer funds, operated as an unregistered Commodity Trading Advisor, and/or unregistered Commodity Pool Operator, in violation of the Commodity Exchange Act and its Regulations.

Respondent has failed to comply with the Subpoena despite ample notice, multiple grants of extensions, and notice of a potential enforcement action. In fact, though he confirmed that he possesses documents responsive to the Subpoena, Respondent has produced no documents to the Commission. The Subpoena is well within the Commission's authority, and the documents and

information it demands are sufficiently definite and seek reasonably relevant information. The Commission's sole avenue to redress Respondent's failure to comply with the Subpoena is in this Court, which is a proper venue for this action. As discussed in greater detail below, this Court possesses subject matter jurisdiction for subpoena enforcement, and personal jurisdiction over Mr. Wonsey.

Accordingly, the Commission seeks an order from the Court requiring Respondent to show cause why he should not be compelled to comply fully with the Subpoena and, if necessary, an order requiring Respondent to comply fully with the Subpoena.

## I.     FACTUAL BACKGROUND

### A.     THE PARTIES

Patrick Wonsey is an individual who resides in Riverdale, Florida. *See* Declaration of Commission Investigator Kevin Samuel in Support of Application for an Order to Show Cause and an Order Requiring Compliance with Administrative Subpoena ("Inv. Decl.") ¶ 7, attached hereto. OneBell & Associates Inc. ("OneBell") is an active Florida Profit Corporation registered effective February 7, 2017. *Id.* ¶ 9 and Ex. A thereto. Patrick Wonsey incorporated OneBell, is its President and Registered Agent, and shares its principal address as his own. *Id.* TradeDow LLC ("TradeDow") is a Florida Limited Liability Corporation registered effective October 19, 2018 and administratively dissolved on September 25, 2020. *Id.* ¶ 10 and Ex. B thereto. Until TradeDow's dissolution, Patrick Wonsey was the Authorized Manager and Registered Agent of TradeDow. *Id.* None of Wonsey, OneBell, nor TradeDow has ever been registered with the Commission in any capacity. *Id.* ¶¶ 8-10.

The Commission is an independent federal regulatory agency responsible for administering and enforcing the Commodity Exchange Act, 7 U.S.C. §§ 1–26 (2018) (the "Act" or "CEA"), and Commission Regulations, 17 C.F.R. § 1.1–190.10 (2019) promulgated

thereunder ("Regulations").  Inv. Decl. ¶ 3.  The Commission's mission is "to promote the integrity, resilience, and vibrancy of the U.S. derivatives markets through sound regulation." COMMODITY FUTURES TRADING COMMISSION, https://www.cftc.gov/About/Mission/index.htm (last visited February 22, 2021).  The markets within the Commission's jurisdiction "are affected with a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair and financially secure trading facilities."  7 U.S.C. § 5(a) (2018).  These markets are "essential to the U.S. and global economies," and the Commission works to ensure that "market participants can use the markets with confidence."  COMMODITY FUTURES TRADING COMMISSION DIVISION OF ENFORCEMENT, ENFORCEMENT MANUAL, at 2 (May 20, 2020), available at https://www.cftc.gov/LawRegulation/Enforcement/EnforcementManual.pdf.

The Division's mission is to "protect the public and preserve market integrity by detecting, investigating, and prosecuting violations of the CEA and the Regulations."  *Id.*  The Division has broad powers to conduct investigations into potential violations of the CEA or its Regulations through various avenues.  *Id.* at 3.  Chief among the Division's tools are voluntary requests for information and interviews of potential witnesses, inspections of required records of entities or persons required by law to register with the Commission, procurement of information from other governmental or quasi-governmental entities, analysis of market data, the nationwide issuance of subpoenas for documents and testimony, and whistleblowers.  *Id.* at 3-4; *see also* 7 U.S.C. §§ 6g, 9(5)-(6) (2018); Inv. Decl. ¶ 4.

**B.     THE DIVISION'S INVESTIGATION AND THE SUBPOENA**

Early in 2020, the Division obtained information indicating that Mr. Wonsey may have violated or may be violating the Act and Commission Regulations by, among other things, operating as an unregistered Commodity Trading Advisor and/or as an unregistered Commodity

3

Pool Operator, and/or fraudulently soliciting investor funds.  Investigator Decl. ¶ 11.  Accordingly, on behalf of the Commission, the Division initiated an investigation from its Washington, D.C. headquarters to discern whether Mr. Wonsey, OneBell, TradeDow, and/or other associated individuals or entities had violated or were violating provisions of the Act and/or Regulations.  *Id*. ¶ 12.

Division staff have taken numerous steps in furtherance of the investigation from the Commission's headquarters.  Specifically, Division staff in Washington, D.C.:  1) obtained authority to investigate pursuant to a formal order issued by the Commission; 2) sent correspondence to and received correspondence from individuals and entities located across the country regarding Mr. Wonsey and his companies; 3) conducted telephone interviews with potential witnesses, including Mr. Wonsey; 4) issued requests for documents and subpoenas to individuals and entities across the country; 5) obtained documents in response to those requests and subpoenas; and 6) compiled and maintained investigative files.  *Id*. ¶¶ 13-14.

Information obtained by the Division indicates that Mr. Wonsey solicited customer funds for a commodity pool through OneBell and advertised services of a commodity trading advisor through TradeDow, neither of which he registered with the Commission.  *Id*. ¶ 16.a, b, d, e, j.  The evidence collected further indicates that Mr. Wonsey made claims that appear to be fraudulent in promotion of these unregistered services.  For example, the website advertising OneBell claims to use "one of the best algorithms on the market" and states that it "has generated over $1 million dollars in profits for family and friends," experiencing annual profit margins of "50+."  *Id*. ¶ 16.a and Exhibit C thereto.  The website for TradeDow claims that "TradeDow has proven to provide our customers with up to 20% of profitability to their trading accounts each month" and proffers purported customer testimonials crediting TradeDow with "thousands of

4

dollars in profit . . . [which] has made it possible for me to earn extra cash without getting a second job." *Id*. ¶ 16.b and Exhibit D thereto. The evidence collected so far has not substantiated these claims. *Id.* ¶ 16.c.

The information that Division staff gathered made clear that Mr. Wonsey—who controls and operates both OneBell and TradeDow—possesses vital information directly concerning the investigation. On April 7, 2020, the Division contacted Mr. Wonsey and conducted an informal interview by telephone. *Id.* ¶ 17. During that call, Mr. Wonsey confirmed that he retained numerous documents relevant to the Division's investigation, including bank account records, trading account records, and other documents concerning his operation of OneBell and TradeDow. *Id*. Mr. Wonsey agreed orally to produce the documents to the Division on a voluntary basis. *Id*. Division staff indicated that it would follow up with a Voluntary Request for Documents, and Mr. Wonsey confirmed his email address for the Division to receive that Request. *Id*. On April 17, 2020, the Division sent an email to Mr. Wonsey's confirmed address attaching a Voluntary Request for Documents, which outlined the categories of documents requested and asked for production by May 8, 2020. *Id.* ¶ 18 and Exs. E and F thereto. Despite his assurances on the call, Mr. Wonsey failed to produce any documents in response to that Request, nor did he respond to the Division's subsequent attempts to contact him by phone and email. *Id.* ¶ 19.

Accordingly, acting pursuant to a formal order of investigation authorized by the Commission, the Division issued the Subpoena to Mr. Wonsey on May 28, 2020. *Id.* ¶ 20 and Ex. G thereto. The Division emailed the Subpoena to Mr. Wonsey's confirmed email address that same day. *Id.* ¶ 20 and Ex. E thereto, at 5. After initially attempting service at the address listed on OneBell and TradeDow state registration paperwork, the Division learned that Mr.

Wonsey had recently relocated; the Division successfully served Mr. Wonsey by UPS at his home address in Riverdale, FL on July 7, 2020.  *Id*. ¶ 21 and Ex. H thereto.

The Subpoena requires Mr. Wonsey to produce certain documents from April 1, 2015 through the present that relate to himself, OneBell, and TradeDow.  These include documents pertaining to OneBell and TradeDow's formation and operations, promotional materials, and trading clients; client payment records; certain trading account and bank account records; and correspondence relating to CFTC registration.  *Id.* ¶ 22 and Ex. G at 8-9.  The Subpoena required Mr. Wonsey to produce responsive documents by June 11, 2020.  *Id.* at 23 and Ex. G.  The front of the Subpoena contained a warning in bold-faced capital letters that "failure to comply with this subpoena may result in the commencement of a legal action in the United States District Court to compel compliance with the requirements hereof."  *Id.* and Ex. G at 3.

Simultaneous with its efforts to obtain records directly from Mr. Wonsey, the Division took other investigative steps, including issuing subpoenas to Mr. Wonsey's financial institutions.  *Id.* ¶ 24.  Mr. Wonsey engaged with the Division by email on that effort throughout the summer and into fall, yet he produced no documents during this time.  *Id.*

On October 23, 2020, the Division reminded Mr. Wonsey that the Subpoena remained outstanding and offered him another opportunity to comply before commencing enforcement proceedings, stating that he could have one additional week, until October 30, to produce the required records.  *Id.* ¶ 25 and Ex. E at 6.  On October 30, Mr. Wonsey reached out to the Division for the first time to discuss production in response to the Subpoena; Division staff scheduled a call to discuss how best to transmit the documents, and resent Mr. Wonsey the Subpoena by email.  *Id.* ¶ 26 and Ex. E at 8.  On November 3, Mr. Wonsey spoke with Division staff by phone, confirmed that he had received the Subpoena, and reviewed with the staff the

6

substance and logistical matters required for compliance. *Id.* ¶ 27. Having finally discussed the particulars of the Subpoena with Mr. Wonsey, the Division granted Mr. Wonsey's additional request for an extension, giving him until November 15 to comply with the Subpoena. *Id.* On November 16, one day after the agreed upon extended deadline, Mr. Wonsey advised that there had been a death in the family and requested a further one-week extension, which the Division granted. *Id.* ¶ 28, Ex. E at 11. One week after that deadline passed with no production, Mr. Wonsey advised the Division that he had experienced a medical emergency, which prevented him from complying. *Id.*, Ex. E at 12. The Division advised that it would grant one final extension, until December 7, for Mr. Wonsey to comply with the Subpoena. *Id.* As of the date of this Application, Mr. Wonsey still has produced no documents to the Commission. *Id.* ¶ 29.

## II.    JURISDICTION AND VENUE

The Commodity Exchange Act permits expansive service and enforcement of administrative subpoenas. It grants the Commission nationwide and global authority to "administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records that the Commission deems relevant or material to the inquiry." 7 U.S.C. § 9(5); *see also id.* § 9(6) ("The attendance of witnesses and the production of any such records may be required from any place in the United States . . . at any designated place of hearing."). The Commission's authority to enforce its subpoenas is equally expansive:

> In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction in which the investigation or proceeding is conducted, or where such person resides or transacts business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records. Such court may issue an order requiring such person to appear before . . . [an] officer designated by the

7

> Commission, there to produce records, if so ordered, or to give testimony touching the matter under investigation or in question.

7 U.S.C. § 9(8). As explained below, because Section 9(8) "both establishes where venue and personal jurisdiction are proper and serves as a specific grant of subject matter jurisdiction," this Court has jurisdiction to enforce the Subpoena, and is a proper venue for doing so. *See* Memorandum and Order, *In re CFTC v. Sullivan,* No. 15-mc-00032 (RDM), Dkt. No. 8, at 2 (D.D.C. April 3, 2015).

### A. THE COURT HAS SUBJECT MATTER JURISDICTION

The Commodity Exchange Act confers subject matter jurisdiction for subpoena enforcement matters upon "any court of the United States within the jurisdiction in which the investigation or proceeding is conducted." 7 U.S.C. § 9(8). The D.C. Circuit employs a two-part test to determine whether an investigation "is conducted" in the District of Columbia for purposes of jurisdiction over agency subpoenas. Courts assess "(1) whether the District of Columbia bore a sufficiently 'reasonable relation to the subject matter of the investigation' to qualify as a place where the inquiry was carried on, and (2) whether the agency's choice of this jurisdiction as its place of inquiry exceeded 'the bound of reasonableness.'" *Fed. Election Comm'n v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 856-57 (D.C. Cir. 1979) ("*La Rouche*") (citing *Fed. Trade Comm'n v. MacArthur*, 532 F.2d 1135, 1140 (7th Cir. 1976)) (finding jurisdiction to enforce Federal Election Commission subpoenas issued to organizations at their New York offices because the District of Columbia, where the Commission maintains its headquarters, was the "hub" of investigative activity). In making that assessment, courts consider:

> [T]he place where the Commission held its hearing, the place where it made the decision to authorize the investigation, the place where the subpoenas were issued, the place where its correspondence emanated, the place where the Commission determined that unlawful actions had occurred, the location of the

8

> documents and witnesses, and the location of the headquarters of the subpoenaed company.

*U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 249 (D.C. Cir. 2005) ("*ASAT*") (following *La Rouche* and finding jurisdiction over an action to enforce a U.S. International Trade Commission subpoena issued to Californian and foreign companies); *see also Sullivan,* No. 15-mc-00032, Dkt. No. 8, at 2 (applying the *La Rouche* and *ASAT* analysis to a CFTC subpoena enforcement matter).

For investigations that "encompass[] multiple jurisdictions" and are "nationwide in scope," courts have found that "the location of the investigating office may well be the most reasonable choice for purposes of subpoena enforcement." *Nat'l Labor Relations Bd. v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1202 (D.C. Cir. 2006) (explaining *La Rouche* and *ASAT* as involving "nationwide investigation[s]" touching multiple jurisdictions, in contrast to the NLRB investigation at issue in *Cooper Tire*, which centered exclusively on the activities at a particular manufacturing plant in Mississippi). This is so because "[w]hen an agency's investigation is nationwide in scope, its subject matter is not located in any particular place," and the agency may reasonably choose to enforce its subpoenas in the location of an office that serves as the "hub" of its investigation. *Id.* at 1202-03; *see also id.* at 1204 ("[Jurisdiction] do[es] not . . . always require[] a national investigation; enforcement in the District, as anywhere else, depends on an application of the factors listed in *La Rouche* and *ASAT*, and a national investigation merely works to tip the scale in favor of the District."); *CFTC v. Conley,* No. 16-mc-02158 (EGS), Dkt. No. 9, at 4 (D.D.C. Feb. 6, 2017) ("[W]hen an agency is conducting a nationwide investigation and the District of Columbia is the 'hub' of that investigation, a District Court in the District of Columbia has subject matter jurisdiction and venue is proper in that court.").

*   *   *

Because this action satisfies both prongs of the *La Rouche* test as interpreted by *ASAT* and *Cooper Tire*, this Court has jurisdiction to enforce the Subpoena.

### 1. The District of Columbia Is Reasonably Related to the Commission's Nationwide Investigation

The Division is conducting a nationwide investigation into Mr. Wonsey and his affiliated companies. Inv. Decl. ¶¶ 13-14. Division staff issued requests to Commission registrants across the country for documents relating to any trading accounts in the name of Mr. Wonsey, OneBell, or TradeDow. *Id.* ¶ 14.a. Division staff also issued subpoenas to financial institutions located in Arizona and Indiana, and to Mr. Wonsey, located in Florida. *Id.* ¶ 14.b, e. In return, the Division has received productions of documents from Illinois and Texas. *Id.* ¶ 14.c. Division staff conducted telephone interviews and engaged in related correspondence with individuals and entities located in Illinois, and with Mr. Wonsey, located in Florida. *Id.* ¶ 14.d, e. The Division anticipates that its investigation will continue to occur on this nationwide basis. *Id.* ¶ 15.

The District of Columbia is the hub of this investigation. As in *ASAT*, "the Commission's activities regarding the subpoena at issue were conducted overwhelmingly in the District of Columbia." *ASAT*, 411 F.3d at 249. The attorneys and staff conducting the investigation are located in the District of Columbia, as are the investigative files. Inv. Decl. ¶ 13. The formal order of investigation, the Subpoena, and related correspondence emanated from Commission headquarters in the District of Columbia. *Id*. Finally, the Subpoena was returnable in the District of Columbia. *Id.*, Ex. G. In other words, "[b]ecause . . . the Commission conducted the administrative activities essential to the investigation in the District of Columbia, the district court here ha[s] subject matter jurisdiction" under the Act. *ASAT*, 411 F.3d at 249 (citations omitted).

Indeed, courts in the District of Columbia have routinely found jurisdiction to enforce CFTC subpoenas issued as part of investigations emanating from the Commission's headquarters. *See, e.g.*, *CFTC v. Ekasala*, 62 F. Supp. 3d 88 (D.D.C. 2014) (enforcing a CFTC subpoena issued to a Florida-based owner of a Florida company); *CFTC v. McGraw Hill Cos., Inc.*, 507 F. Supp. 2d 45 (D.D.C. 2007) (enforcing, in part, a CFTC subpoena issued to a New York-based corporation); *In re CFTC v. Butler*, No. 18-mc-00136 (RJL), Dkt. No. 7 (D.D.C. Apr. 24, 2019) (enforcing a CFTC subpoena issued to an Alabama- and Florida-based individual); *Conley,* No. 16-mc-02158, Dkt. No. 9 (enforcing a CFTC subpoena issued to a Florida-based resident); *In re CFTC v. Lake*, No. 15-mc-01875 (RDM), Dkt. No. 9 (D.D.C. Feb. 29, 2016) (enforcing a CFTC subpoena issued to an Illinois-based individual); *Sullivan,* No. 15-mc-00032, Dkt. No. 8 (enforcing a CFTC subpoena issued to a California-based owner and California company). This is not surprising, as "administrative activities [pertaining to agency subpoenas] may occur in the District of Columbia in most, if not all, Commission inquiries and therefore the district court for the District of Columbia often, if not always, would have subject matter jurisdiction." *ASAT*, 411 F.3d at 250.

*Cooper Tire*—which appears to be the sole instance of a District of Columbia court denying jurisdiction in an agency subpoena enforcement action—is readily distinguishable. The NLRB's inquiry there focused on localized labor-related activities occurring at a single manufacturing plant, and stemmed from alleged violations of an existing cease-and-desist order previously issued by a court in that jurisdiction. *Cooper Tire*, 438 F.3d at 1198-99, 1202. Facing these facts, the court found that the NLRB's mandate was no broader than the particularized events at issue, all occurring in Mississippi. *Id.* at 1204.

11

Here, by contrast, the Division's investigation, undertaken in the District of Columbia, concerns entities registered in Florida offering services through websites with no geographic restriction, relevant records collected from Illinois and Texas, trading through accounts and on exchanges located in Illinois, and potentially fraudulent activity in connection with solicitations that crossed state lines.  Inv. Decl. ¶¶ 9-10, 14, 16.  The CFTC's mandate is to protect the integrity of United States derivatives markets.  COMMODITY FUTURES TRADING COMMISSION, https://www.cftc.gov/About/MissionResponsibilities/index.htm (last visited February 22, 2021).  Any activity in these markets, including Mr. Wonsey's potentially fraudulent activity, necessarily affects market participants, such as customers solicited through the internet, located across the United States.

Because the Commission's activities in this nationwide investigation have been conducted almost exclusively in the District of Columbia, the District of Columbia bears "a sufficiently 'reasonable relation to the subject matter of the investigation' to qualify as a place" where the investigation was conducted under 7 U.S.C. § 9(8), in satisfaction of the first prong under *La Rouche*.  *La Rouche*, 613 F.2d at 856-57.

### 2. The Commission Reasonably Chose to File Its Application in the District of Columbia

In light of the Commission's location, headquartered in the District of Columbia, and the nationwide scope of its investigation, the Commission's choice of this jurisdiction as the place of its inquiry and for the enforcement of the Subpoena was well within "the bound of reasonableness" as required by the second *La Rouche* prong.  *La Rouche*, 613 F.2d at 857.  *La Rouche* made clear that "the bound of reasonableness is broad indeed" and "an agency should be given substantial leeway in selecting its place of inquiry for subpoena enforcement purposes."

12

*Id.* at 855.[1]  Here, as the Commission issued the Subpoena to Mr. Wonsey from the Commission's headquarters in Washington, D.C., the Subpoena was returnable there, and the Commission engaged with Mr. Wonsey by telephone and email from Washington, D.C., Mr. Wonsey could reasonably believe that he would be subject to the jurisdiction of the federal court in the District of Columbia.

Nor would Mr. Wonsey be able to demonstrate any hardship associated with litigating this action in the District of Columbia.  As one court explained, the location of the respondent and his relevant documents "has little bearing on this [subpoena enforcement] proceeding" where "[t]here is no need for the respondent to produce documents or witnesses at the hearing [nor] to appear in person at the hearing."  *Resolution Trust Corp. v. McDougal*, 158 F.R.D. 1, 1 (D.D.C. 1994); *see also Ekasala*, 62 F. Supp. 3d at 95-96 (denying motion to change venue, and rejecting Florida-based individual's argument that litigating a subpoena enforcement action in the District of Columbia was a hardship).  Because Mr. Wonsey is unable to "demonstrate [the] actual hardship of defending [him]self in the District of Columbia, . . . it is not difficult to conclude that the Commission's choice of the District of Columbia to enforce the subpoena is well-within the 'bound of reasonableness.'"  *ASAT*, 411 F.3d at 250 (quoting *La Rouche*, 613 F.2d at 857).

### B. THIS COURT HAS PERSONAL JURISDICTION OVER MR. WONSEY

Under Federal Rule of Civil Procedure 4(k)(1)(c), "[s]erving a summons . . . establishes personal jurisdiction over a defendant when authorized by federal statute."

---

[1]  This is especially the case as the Commission has no regional office in Florida.  *See Conley,* No. 16-mc-02158, Dkt. No. 9, at 6 ("Given that the Commission is conducting an essentially nationwide investigation from its national office in the District of Columbia it is afforded broad discretion in selecting this jurisdiction as its place of inquiry, and thus it cannot be said that the Commission exceeded the bound of reasonableness in bringing this enforcement action in the District of Columbia.  That is especially the case because the Commission is headquartered in the District of Columbia and has no regional office in Florida [where respondent resides]." (citations omitted)).

13

Fed. R. Civ. P. 4(k)(1)(c).  In providing that "the Commission may invoke the aid of any court of the United States within the jurisdiction in which the investigation or proceeding is conducted," Section 9(8) of the Act thus "establishes where . . . personal jurisdiction [is] proper."  *Sullivan,* No. 15-mc-00032, Dkt. No. 8, at 2; *see also Conley,* No. 16-mc-02158, Dkt. No. 9, at 7 (holding that the language of Section 9(8) "must be interpreted as a special grant of jurisdiction" and thus authorizes the court "to obtain jurisdiction of the person [ ] of the defendant [ ] through service upon [him] of its process in whatever district [he] may be found.'"); *ASAT*, 411 F.3d at 249 (interpreting similar statutory language to provide nationwide service of process and thus personal jurisdiction); *La Rouche*, 613 F.2d at 860 ("It is inconceivable to us that Congress would have vested the Commission with such broad powers of compulsory process, while intending that they not have extraterritorial effect.").  Because the Commission served Mr. Wonsey with the Subpoena, this Court will obtain personal jurisdiction over Mr. Wonsey once he is served with the Commission's Application and accompanying papers, including any order to show cause issued by the Court.  *See Conley*, No. 16-mc-02158. Dkt. No. 9, at 7 (holding that personal jurisdiction was proper because Conley "was served with the Commission's subpoena and subsequently served with this Court's order directing him to show cause").

      **C.     VENUE IN THIS COURT IS PROPER**

      7 U.S.C. § 9(8) likewise provides for venue in this District.  Although questions of subject matter jurisdiction and proper venue are typically distinct, under the controlling statutory language "the two inquiries merge."  *ASAT*, 411 F.3d at 248.  Foer the same reasons that it was within the "bound of reasonableness" for the Commission to initiate this action in the District of Columbia, *see supra* at 12-13, venue is proper here.  *Id.* ("Because the second [*La Rouche*] criterion resembles a traditional venue analysis that focuses on the convenience of the forum to the parties, . . . [it] implicates whether that court is a proper venue." (citations omitted)).

14

### III. THE SUBPOENA IS ENFORCEABLE

Administrative agencies like the Commission "wield broad power to gather information through the issuance of subpoenas," *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994), and "[a]n administrative subpoena must be enforced if the information sought 'is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)); *accord Resolution Trust Corp. v. Frates*, 61 F.3d 962, 964 (D.C. Cir. 1995); *CFTC v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014); *United States v. Capitol Supply, Inc.*, 27 F. Supp. 3d 91, 99 (D.D.C. 2014). Here, the Court should enforce the Subpoena because it seeks information that is within the Commission's authority and because the Subpoena otherwise complies with this Circuit's standard for enforcement.

#### A. THE SUBPOENA IS WITHIN THE COMMISSION'S BROAD INVESTIGATIVE AUTHORITY

The Commission, like other federal agencies, has far-reaching investigatory authority permitting it to "investigate merely on suspicion that the law is being violated, or even just because [the agency] wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43; *see also Walde*, 18 F.3d at 947 (following *Morton Salt*). The Commission's authority is especially broad pre-complaint, when it "is under no obligation to propound a narrowly focused theory of a possible future case." *Ekasala*, 62 F. Supp. 3d at 93 (quoting *Federal Trade Comm'n v. Texaco*, 555 F.2d 862, 872 (D.C. Cir. 1977)).

An essential component of this investigatory power is the Commission's ability to issue and serve subpoenas. *See* 7 U.S.C. § 12(a)(1) ("[T]he Commission may make such investigations as it deems necessary to ascertain the facts regarding the operations of . . . persons

15

subject to the provisions of this Act.") *and* 7 U.S.C. § 9(5) (permitting designated officers to "subpoena witnesses, compel their attendance, take evidence, and require the production of any . . . records that the Commission deems relevant or material to the inquiry"); *see also CFTC v. Harker*, 615 F. Supp. 420, 424 (D.D.C. 1985) ("[T]he Act grants the Commission the authority to subpoena witnesses and to seek judicial enforcement of such subpoenas.").

Having followed proper administrative procedure, "[t]he CFTC must be given substantial leeway to investigate" so that it may assess whether parties have "complied with or run afoul of the [Act] and CFTC Regulations." *Collins v. CFTC*, 737 F. Supp. 1467, 1485 (N.D. Ill. 1990). "[E]nforcement of an agency's investigatory subpoena will be denied only when there is 'a patent lack of jurisdiction' in an agency to regulate or to investigate." *Federal Trade Comm'n v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 820 (2002); *see also Texaco*, 555 F.2d at 872 ("[T]he scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity.").

The Subpoena to Mr. Wonsey—properly issued pursuant to a formal order of investigation—plainly falls within the scope of the Commission's authority to investigate potential violations of the Act and Regulations. *See* 7 U.S.C. §§ 9, 12(a)(1) (2018). The Subpoena seeks documents and information relating to a potentially fraudulent scheme involving the failure to register as a Commodity Trading Advisor and/or a Commodity Pool Operator, and/or fraudulent solicitation of customer funds, for the purported purpose of trading commodity futures and option products in the United States. *See* Investigator Decl. ¶ 11-12, Ex. G. This type of conduct falls squarely within the Commission's regulatory authority. *See, e.g.*, 7 U.S.C. §§ 6b, 6c(b), 6*o*, and 9 (2018); 17 C.F.R. § 180.1 (2019); *see also CFTC v. Trade Exchange*

*Network Ltd.*, 117 F. Supp. 3d 29, 35-38 (D.D.C. 2015) (holding that binary options in commodities are financial instruments regulated by the Commission under the Act).  Documents responsive to the Subpoena would assist the Commission with determining whether there are or have been violations of these provisions.

      **B.**      **THE SUBPOENA SEEKS SPECIFIC, RELEVANT INFORMATION**

The standard for determining the relevance of records and testimony requested by an administrative subpoena "is more relaxed than in an adjudicatory one . . . . The requested material, therefore, need only be relevant to the *investigation*—the boundary of which may be defined quite generally." *Walde*, 18 F.3d at 947 (citations omitted); *accord Ekasala*, 62 F. Supp. 3d at 93.  In making a relevancy determination, "the agency's own appraisal of relevancy must be accepted so long as it is not obviously wrong." *Federal Trade Comm'n v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (citations omitted); *accord Ekasala*, 62 F. Supp. 3d at 93.  In a challenge to a subpoena, "the party resisting an administrative subpoena bears the burden of showing that the information sought is irrelevant." *Frates*, 61 F.3d at 964.

Here, Mr. Wonsey has not challenged the Subpoena or otherwise provided any explanation or basis for his failure to comply.  In fact, Mr. Wonsey indicated to the Division staff that he possesses responsive documents and would produce them to the Commission, repeatedly requesting extensions of time to do so, but ultimately failing to produce any responsive materials.  Inv. Decl. ¶¶ 17-19, 24-29.

In any event, a belated claim of irrelevancy would certainly fail.  The Subpoena seeks information that is clearly relevant to the Commission's investigation into potential violations by Mr. Wonsey and related entities, including OneBell and TradeDow.  For example, documents concerning OneBell and TradeDow's business formations and operations and promotional materials, Inv. Decl., Ex. G at 8 (Nos. 1-3), those concerning Mr. Wonsey's trading accounts,

statements, or practices, *id.* (Nos. 7-8), and correspondence with the National Futures Association or the Commission, *id.* (No. 11), will allow the Commission to determine whether Mr. Wonsey was required to register his businesses with the Commission and to assess the scope and nature of relevant trading involved.  Documents evidencing a complete list of Mr. Wonsey's customers, *id.* (No. 4), and reflecting the associated communications and payment histories, *id.* (Nos. 5-6), will aid the Commission in identifying the full scale of his business and permit CFTC staff to undertake an accounting of any fraud.  Documents concerning Mr. Wonsey's bank accounts, trading accounts, and assets, *id.* (Nos. 7-10), will shed light on not only who may have provided funds for investment to Mr. Wonsey but also whether Mr. Wonsey misappropriated customer funds.  Measured, as they must be, "'only against the general purposes of [the] investigation,'" such requests and demands for testimony indisputably are "reasonably" relevant to the Commission's investigation.  *Ekasala*, 62 F. Supp. 3d at 93 (quoting *Texaco*, 555 F.2d at 874) (finding requests for "corporate formation documents, promotional materials, information regarding former officers and employees, and bank account statements" to "plausibly contain information relevant to the investigation").

Finally, the Subpoena is narrowly focused, limited in time, and imposes minimal burdens on Mr. Wonsey.  The Subpoena provides dates, definitions, instructions, and eleven specific requests for documents, limited to the period of April 1, 2015 through the present.  Inv. Decl., Ex. G.  Such requests are reasonable and should be enforced.  *See Ekasala*, 62 F. Supp. 3d at 93 (enforcing a subpoena with similarly definite requests); *see also Texaco*, 555 F.2d at 882 ("[T]he question is whether the demand is unduly burdensome or unreasonably broad.  Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest.").  To the extent Mr. Wonsey attempts to argue burden, this Court

should deny such argument on the grounds that he "has not been responsive or particularly communicative with the CFTC regarding compliance . . . [and] he never made an attempt to comply with them in the first instance." *See Ekasala*, 62 F. Supp. 3d at 95.

## IV. CONCLUSION

The Court has subject matter jurisdiction over this action, personal jurisdiction over Mr. Wonsey, and venue in this Court is proper. The Subpoena, and the documents and information that it seeks, are well within the Commission's authority, and they are sufficiently definite and seek reasonably relevant information. Therefore, the Court should issue an order requiring Mr. Wonsey to show cause why he should not be compelled to comply fully with the Subpoena. Further, should Mr. Wonsey not show good cause, then the Court should issue a subsequent order requiring Mr. Wonsey to comply immediately and fully with the Subpoena.

Dated: February 22, 2021                    Respectfully submitted,

*/s/* Ilana D. Waxman
Ilana D. Waxman (DC Bar No. 1012358)
*iwaxman@cftc.gov*
Alison Wilson (DC Bar No. 475992)
*awilson@cftc.gov*
U.S. COMMODITY FUTURES TRADING COMMISSION
Three Lafayette Centre
1155 21st Street NW
Washington, D.C. 20581
Tel: (202) 418-5000