UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In the Matter of an Application to Enforce an Administrative Subpoena of the** **COMMODITY FUTURES TRADING COMMISSION,** Applicant, v. **PATRICK WONSEY,** Respondent. | Misc. Action No. 21-13 (JDB) |

## MEMORANDUM OPINION & ORDER

On May 28, 2020, the Commodity Futures Trading Commission (the "Commission") issued a subpoena duces tecum to respondent Patrick Wonsey. See Mem. in Supp. of Appl. for Order to Show Cause & Order Requiring Compliance with Administrative Subpoena [ECF No. 1-1] ("Appl."); Appl. Ex. G [ECF No. 1-9] (the subpoena). When Mr. Wonsey did not timely comply, the Commission applied to this Court on February 22, 2021 for an order requiring compliance with the Commission's subpoena. See Appl. at 1. On July 23, 2021, the Court granted the Commission's application, ordering Mr. Wonsey to "comply in all respects with the May 28, 2020 Subpoena" by producing all requested documents by August 27, 2021, and by personally appearing before the Commission to provide testimony by October 26, 2021. Order Requiring Compliance with Administrative Subpoena [ECF No. 9] ("July 23 Order") at 2. The July 23 Order also specifically advised Mr. Wonsey that "any failure to comply with this Order may result in him being held in contempt of court." Id. at 3. Despite being served with this Court's July 23 Order the day after it was issued, see Notice of Service, Ex. 1 [ECF No. 10-1], Mr. Wonsey has

1

done none of the things the Court ordered him to do. Indeed, the Commission has represented that it has had no contact with Mr. Wonsey since June 8, 2021. See Applicant's Mot. to Hold Resp't in Contempt [ECF No. 11] ("Contempt Mot.") at 2.

On October 25, 2021, the Commission submitted a motion asking the Court to hold Mr. Wonsey in contempt for failing to obey the July 23 Order. See id. The Court, cognizant of the need to afford Mr. Wonsey notice and an opportunity to be heard before imposing a civil contempt sanction, see Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994), issued a show cause order on November 5, commanding Mr. Wonsey to "show cause by written submission why he should not be held in civil contempt for failing to comply with the Court's July 23 Order" by December 5, 2021. Order to Show Cause, Nov. 5, 2021, [ECF No. 12] at 2. The Court further specifically warned Mr. Wonsey that, if he "fail[ed] to show cause by the date set out above, the Court w[ould] find him in civil contempt and impose whatever penalties it deems appropriate in order to effectuate compliance with its July 23 Order." Id. The Court's deadline has come and gone, with neither compliance nor cause shown by Mr. Wonsey. Thus, the Court will now consider whether his conduct warrants a citation for civil contempt.

**I. Civil Contempt**

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Armstrong v. Exec. Off. of the President, Off. of Admin., 1 F.3d 1274, 1289 (D.C. Cir. 1993) (per curiam) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)). The contempt power is "necessary to the exercise of all others," and it encompasses the "power to impose . . . submission to [the court's] lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution." Bagwell, 512 U.S. at 831 (third alteration in original) (first quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34

(1812); then quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227 (1821)).  In modern times, civil contempt for noncompliance has three elements: "(1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order."  United States v. Two Gen. Elec. Aircraft Engines, 317 F. Supp. 3d 516, 520 (D.D.C. 2018) (quoting SEC v. Bankers All. Corp., 881 F. Supp. 673, 678 (D.D.C. 1995)).  In addition, the alleged contemnor must have "violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence."  Univ. of Colo. Health at Mem'l Hosp. v. Becerra, 531 F. Supp. 3d 10, 19 (D.D.C. 2021) (quoting Broderick v. Donaldson, 437 F.3d 1226, 1234 (D.C. Cir. 2006)).

The Commission has met its burden of showing by clear and convincing evidence that Mr. Wonsey is in contempt of court.  The July 23 Order has been in effect since the date it was issued, and the Commission has submitted proof that Mr. Wonsey was personally served with it.  See Notice of Service, Ex. 1.  The July 23 Order also required Mr. Wonsey to perform certain actions— namely, to "produce all books, papers, documents, and other tangible things specified in . . . the [May 28, 2020] Subpoena to the Commission" and to "personally appear before the Commission . . . to provide testimony," July 23 Order at 2—and it did so in clear and unambiguous terms.  Cf. In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705, Misc. Case Nos. 18-175, 18-176, and 18-177 (BAH), 2019 WL 2182436, at *3–7 (D.D.C. Apr. 10, 2019) (finding three banks in contempt for violating "unambiguous" order compelling them to comply with grand jury and administrative subpoenas), aff'd sub nom. In re Sealed Case, 932 F.3d 915, 939–40 (D.C. Cir. 2019) (describing the order at issue as "perfectly pellucid"); Musalli Factory for Gold & Jewelry Co. v. New York Fin. LLC, No. 06 Civ. 82 (AKH), 2010 WL 2382415, at *2 (S.D.N.Y. June 14, 2010) (finding that the court's previous "one-page order

direct[ing] Defendants to 'produc[e] all responsive documents to plaintiff's counsel' . . . [and] to appear for a deposition" was clear and unambiguous (second alteration in original)).  Between the Commission's subpoena (which has now been outstanding for over eighteen months), the July 23 Order, and the Court's November 5 Order to Show Cause, there can be no doubt that Mr. Wonsey knows exactly what is required of him.

Finally, Mr. Wonsey has not complied with the Court's July 23 Order.  Although he has been subject to a direct order by the Court for more than four months, Mr. Wonsey has taken no steps either to produce the required documents or to give testimony to the Commission. See Decl. of Alison B. Wilson in Supp. of Contempt Mot. [ECF No. 11-1] ("Wilson Decl.") ¶ 16. Indeed, he has not even communicated with the Commission since June 8, 2021. Id. ¶¶ 14, 16; Contempt Mot. at 4.  The Commission has thus demonstrated Mr. Wonsey's non-compliance through a sworn affidavit and other representations to the Court, which is sufficient to meet its burden.[1]  See, e.g., Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Artharee, 48 F. Supp. 3d 25, 29–30 (D.D.C. 2014) (concluding that undisputed sworn affidavit by moving party constituted clear and convincing evidence supporting contempt citation).  In sum, the Commission has shown by clear and convincing evidence that Mr. Wonsey has failed to comply with a clear and unambiguous order of this Court.  A civil contempt citation is thus warranted.

## II. The Appropriate Sanction

Having found that Mr. Wonsey is in contempt, the Court must now determine the appropriate sanction. "Courts have wide discretion in fashioning remedial sanctions for civil contempt," United States v. Latney's Funeral Home, Inc., 41 F. Supp. 3d 24, 36 (D.D.C. 2014)

---

[1] Although the Commission's last representation regarding Mr. Wonsey's non-compliance came on October 25, the Court trusts that the Commission would have alerted the Court if anything had changed in the meantime.  And surely, if Mr. Wonsey had complied with the Order, he would have informed the Court in a response to the Court's November 5 Show Cause Order.

4

(quoting SEC v. Levine, 671 F. Supp. 2d 14, 36 (D.D.C. 2009)), but the sanction imposed must be remedial, "designed to compel future compliance with a court order," Bagwell, 512 U.S. at 827. "The sole purpose of civil contempt sanctions is to 'coerce compliance or compensate a complainant for losses sustained,' not to punish," Latney's Funeral Home, 41 F. Supp. 3d at 35 (quoting Guantanamera Cigar Co. v. Corporacion Habanos, S.A., 750 F. Supp. 2d 31, 34 (D.D.C. 2010)), and, "[w]hen selecting what sanction to impose, a court must 'exert only so much authority . . . as is required to assure compliance,'" Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (quoting Bankers All. Corp, 881 F. Supp. at 678).

In its contempt motion, the Commission requests that the Court impose a per diem fine of $100 until Mr. Wonsey complies, Contempt Mot. at 6; that, if he has not complied within fourteen days of the issuance of the contempt order, the Court issue an arrest warrant, id.; and that the Court require Mr. Wonsey to pay the Commission's costs and attorney's fees incurred in bringing the motion for contempt, id. at 6–7. The Court agrees with the broad outline of the Commission's proposal but will make several tweaks to both the structure and the timing of the sanctions.

First, one of the defining characteristics of civil contempt—as opposed to criminal contempt—is the ability of the contemnor to purge his contempt. See Bagwell, 512 U.S. at 828–29 (contrasting civil sanctions in which "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act" with criminal contempt sanctions which "the contemnor cannot avoid or abbreviate . . . through later compliance"). And in this Circuit, the second step of typical "three-stage civil contempt" involves "issuance of a conditional order finding respondent in contempt and threatening to impose a specified penalty unless respondent purges himself of contempt by complying with prescribed purgation conditions." NLRB v.

Jackson Hosp. Corp., 786 F. Supp. 2d 123, 137 (D.D.C. 2011) (quoting Oil, Chem. & Atomic Workers Int'l Union v. NLRB, 547 F.2d 575, 581 (D.C. Cir. 1976)).  In order to conform to this practice—and to ensure that Mr. Wonsey, who is not represented in this matter and does not receive electronic delivery of the Court's orders, is informed of the Court's order before sanctions accrue—the Court will give Mr. Wonsey fourteen days from the date of this Order to comply with the July 23 Order (and, accordingly, with the Commission's subpoena) before sanctions are imposed.

After that fourteen-day purgation period, however, the Court will impose a per diem fine of $100, payable to the Clerk of Court, for every calendar day in which Mr. Wonsey has not complied with the July 23 Order and so remains in contempt.  See, e.g., Salazar ex rel. Salazar v. District of Columbia, 602 F.3d 431, 438–41 (D.C. Cir. 2010) (approving the use of per diem fines as a sanction for civil contempt); Bagwell, 512 U.S. at 829 (same).  The accrual of these fines will cease upon Mr. Wonsey's compliance with the Court's July 23 Order, and in order to ensure that no unwarranted liability accrues, the Court will also order the Commission to notify the Court promptly of any communication it receives from Mr. Wonsey with respect to the Commission's subpoena, the Court's July 23 Order, or this contempt order.

If these fines do not have the desired effect of inducing Mr. Wonsey to comply with the Court's Order, the sanctions will increase in severity.  After twenty-eight days of per diem fines (i.e., forty-two days after the issuance of this Order), if Mr. Wonsey remains in contempt, the Court will issue a warrant for his arrest and imprisonment.  See Bagwell, 512 U.S. at 828 (noting that "confining a contemnor indefinitely until he complies with an affirmative command" is "[t]he paradigmatic coercive, civil contempt sanction"); see also Uphaus v. Wyman, 360 U.S. 72, 81 (1959) (upholding order that the contemnor be "confined until he produces the documents called

6

for in the subpoenas"). This confinement will be in addition to the continued accrual of per diem fines, but, like the fines, Mr. Wonsey's incarceration will cease the moment he complies with the Court's Order. Mr. Wonsey will thus "carr[y] the keys of his prison in his own pocket." Bagwell, 512 U.S. at 828 (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911)). In addition to the Commission's duty to advise the Court of any communications from Mr. Wonsey, the Court will also order the Commission to submit a status report on the date this sanction becomes applicable, advising the Court whether Mr. Wonsey remains in contempt.

Finally, the Court will order Mr. Wonsey to pay reasonable attorney's fees incurred by the Commission in the preparation and litigation of its contempt motion. "A court may order a civil contemnor to compensate the injured party for losses caused by the violation of the court order, and such an award will often consist of reasonable costs (including attorneys' fees) incurred in bringing the civil contempt proceeding." Unitronics (1989) (R''G) Ltd. v. Gharb, 85 F. Supp. 3d 118, 128 (D.D.C. 2015) (citation omitted); see also CFTC v. Premex, Inc., 655 F.2d 779, 785–86 (7th Cir. 1981) ("It is . . . well settled that such awards [of attorney's fees in contempt proceedings] may be made not only to private plaintiffs but to governmental agencies as well."); CFTC v. Emerald Worldwide Holdings, Inc., No. CV03-8339AHM, 2004 WL 3186580, at *11 (C.D. Cal. July 29, 2004) (granting fees to agency in civil contempt proceeding). The Court agrees that, by stringing the Commission along for the better part of two years and by failing to obey the Court's July 23 Order, Mr. Wonsey "has caused the Commission to expend time and incur costs that, with compliance, it would have avoided." Contempt Mot. at 7. It is thus fair and appropriate that Mr. Wonsey compensate the Commission for its additional efforts to secure his compliance with a clear mandate. The amount of attorney's fees shall be determined a later date, presumably after Mr. Wonsey has complied with his obligations and this proceeding has terminated.

\* \* \* \* \*

For the foregoing reasons, and upon consideration of [11] the Commission's Contempt Motion and the entire record herein, it is hereby

**ORDERED** that the Commission's motion is hereby **GRANTED**; it is further

**ORDERED** that respondent Patrick Wonsey is in **CONTEMPT OF COURT**; it is further

**ORDERED** that Mr. Wonsey shall comply with the Court's July 23 Order—namely, by producing all materials requested by the Commission's May 28, 2020 subpoena and by arranging in good faith a time in the near future for his personal appearance and testimony before the Commission —within fourteen days of being served with this Order; it is further

**ORDERED** that, if Mr. Wonsey has not complied within fourteen days of being served with this Order and thereby remains in contempt of the Court's July 23 Order, he shall be liable for a $100 per diem fine, payable to the Clerk of Court, for each day after said date on which he remains in contempt; it is further

**ORDERED** that the Commission shall promptly advise the Court of any communications it receives from Mr. Wonsey pertaining to the Commission's May 28, 2020 subpoena, the Court's July 23 Order, or this Order; it is further

**ORDERED** that the Commission shall submit a status report twenty-nine days after the commencement of Mr. Wonsey's per diem fines (i.e., forty-three days after execution of service of this Order) advising the Court of the status of Mr. Wonsey's compliance with the Commission's subpoena and this Court's July 23 Order; it is further

**ORDERED** that, if Mr. Wonsey remains in contempt at that time, the Court will issue a warrant for his arrest, authorizing his imprisonment for as long as he remains in contempt of the July 23 Order; it is further

**ORDERED** that the issuance of said arrest warrant shall have no effect on the continued accrual of fines, and that the Court's imposition of imprisonment as a sanction for Mr. Wonsey's contempt shall be in addition to his per diem fines; it is further

**ORDERED** that Mr. Wonsey shall also be liable for the Commission's reasonable attorneys' fees incurred in the preparation and litigation of its contempt motion, in an amount to be determined by the Court at a later date; and it is further

**ORDERED** that the Commission shall personally serve a copy of this Order, [9] the July 23 Order, and [1-9] the Commission's May 28, 2020 subpoena on Mr. Wonsey and shall file proof of service with the Court by not later than December 23, 2021.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: December 9, 2021