IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of an Application to Enforce an Administrative Subpoena of the<br><br>**COMMODITY FUTURES TRADING COMMISSION,**<br><br>       Applicant,<br><br>       v.<br><br>**PATRICK WONSEY,**<br><br>       Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:21-mc-00013-JDB<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PREHEARING BRIEF IN SUPPORT OF REQUEST FOR ARREST WARRANT**

The Commodity Futures Trading Commission ("Commission") respectfully submits this prehearing brief in support of its request for issuance of an arrest warrant for the Respondent [ECF # 21]. The Commission provides this brief in advance of the April 18, 2022 hearing in order to clearly lay out Respondent's repeated delays and failure to comply with the Commission's Subpoena and the Court's orders enforcing the Subpoena. In short, Respondent has failed to substantially comply because: (1) he has not produced any records for one of the subpoenaed entities (TradeDow); and (2) he failed to produce entire categories of responsive documents for another subpoenaed entity (OneBell). Many of these documents are only available from the Respondent, and the Commission has information suggesting that additional responsive documents exist. Moreover, Respondent has provided no valid reason for his continued noncompliance, and has not engaged in a good faith dialogue with the Commission about curing these deficiencies. The Commission does not ask for this serious sanction lightly, but the Respondent's conduct in these proceedings has left it with no other choice. The Respondent should

be arrested and confined until he produces the missing records. If he claims that any record has been lost, misplaced, destroyed, or is otherwise unavailable, he should provide a sworn affidavit, under penalty of perjury, setting forth an explanation regarding why it is not available.

## FACTUAL BACKGROUND

**A. The Commission's Investigation of Respondent, OneBell, and TradeDow**

Early in 2020, the Commission's Division of Enforcement ("Division") obtained information indicating that Respondent may have violated or may be violating the Commodity Exchange Act (the "Act") and Commission Regulations by, among other things, operating as an unregistered commodity trading advisor and/or as an unregistered commodity pool operator, and/or fraudulently soliciting investor funds. Decl. of K. Samuel ¶ 11 [ECF # 1-2]. Accordingly, the Division initiated an investigation to discern whether Respondent, OneBell & Associates Inc. ("OneBell"), TradeDow LLC ("TradeDow"), and/or other associated individuals or entities had violated or were violating provisions of the Act and/or Regulations. *Id*. at ¶ 12.

OneBell is an active Florida Profit Corporation registered effective February 7, 2017. *Id.* ¶ 9 and Ex. A thereto. Patrick Wonsey incorporated OneBell, and is its President and Registered Agent. *Id.* TradeDow LLC is a Florida Limited Liability Corporation registered effective October 19, 2018 and administratively dissolved on September 25, 2020. *Id.* ¶ 10. Until TradeDow's dissolution, Patrick Wonsey was the Registered Agent of TradeDow. *Id.* None of Wonsey, OneBell, nor TradeDow has ever been registered with the Commission in any capacity. *Id.* ¶¶ 8-10.

Information obtained by the Division to date indicates that Respondent appears to have solicited at least $1.5 million of customer funds from at least 22 of investors for a commodity pool through OneBell and advertised services of a commodity trading advisor through TradeDow. The

evidence collected further indicates that Respondent made claims that appear to be fraudulent in promotion of these unregistered services. *See, e.g.*, *id.* ¶¶ 16(a)-(d) and Exs. C & D thereto.

On April 7, 2020, the Division contacted Respondent and conducted an informal interview by telephone. *Id.* ¶ 17. At the outset of the call, the Division orally summarized for Respondent the *Statement to Persons Providing Information about Themselves to the Commodity Futures Trading Commission* (the "Privacy Act notice"), detailing his rights and obligations. Respondent advised that he understood his rights and wished to proceed with the conversation. During the call, Respondent confirmed that he retained numerous documents relevant to the Division's investigation, including documents concerning OneBell and TradeDow, and bank account and trading account records. *Id*. Respondent agreed orally to produce the documents to the Division on a voluntary basis. *Id*. On April 17, 2020, the Division sent an email to Respondent's confirmed address attaching a Voluntary Request for Documents, which outlined the categories of documents requested and asked for production by May 8, 2020. *Id.* ¶ 18 and Exs. E and F thereto. Despite his assurances on the call, Respondent failed to produce any documents in response to that Request, nor did he respond to the Division's subsequent attempts to contact him. *Id.* ¶ 19.

**B. The Subpoena to Respondent, OneBell, and TradeDow**

Accordingly, acting pursuant to a formal order of investigation authorized by the Commission, on May 28, 2020, the Division issued a Subpoena (the "Subpoena") to Respondent, OneBell, and TradeDow. A copy of the Privacy Act notice was attached to the Subpoena. *See* May 28, 2020 Subpoena, at 11-22 [ECF # 1-9]. The Subpoena requires Respondent to produce certain documents from April 1, 2015 through the present that relate to himself, OneBell, and TradeDow. These documents include: those pertaining to OneBell and TradeDow's business formation and operations, promotional materials, and trading clients; communications with clients; client payment records; certain trading account and bank account records; and correspondence

relating to CFTC registration. ECF # 1-2, ¶ 22 and Ex. G thereto. Respondent engaged with the Division throughout the summer and fall of 2020, yet he produced no documents. *Id.* ¶ 24.[1]

**C. Respondent's Continued Failure to Comply with the Subpoena**

On October 23, 2020, the Division reminded Respondent that the Subpoena remained outstanding and provided him another opportunity to comply, stating that he could have one additional week, until October 30, to produce the required records. *Id.* ¶ 25 and Ex. E thereto at 6. On October 30, Respondent reached out to the Division for the first time to discuss production in response to the Subpoena; Division staff scheduled a call to discuss how best to transmit the documents, and re-sent Respondent the Subpoena. *Id.* ¶ 26 and Ex. E thereto. On November 3, 2020, Respondent spoke with Division staff by phone, confirmed that he had received the Subpoena, and reviewed the substance and logistical matters. *Id.* ¶ 27. Having finally discussed the particulars of the Subpoena with Respondent, the Division once again granted Respondent's request for an extension, giving him until November 15, 2020, to comply. *Id.* On November 16, one day after the agreed upon extended deadline, Respondent advised that there had been a death in his family and requested a further one-week extension, which the Division granted. *Id.* ¶ 28 and Ex. E thereto at 11. One week after that deadline passed with no production, Respondent advised the Division that he had experienced a medical emergency, which prevented him from complying. *Id.* and Ex. E thereto at 12. The Division advised that it would grant one final extension, until December 7, 2020, for Respondent to comply with the Subpoena. *Id.*

**D. The Subpoena Enforcement Action**

When Respondent did not timely comply, the Division applied to this Court on February 22, 2021 for an order requiring compliance with the Subpoena. *See* Appl. for an Order to Show

---

[1] Simultaneous with its efforts to obtain records directly from Respondent, the Division took other investigative steps, including the issuance of subpoenas to his financial institutions. *Id.*

4

Cause [ECF # 1].  On July 23, 2021, the Court granted the Division's application, ordering Respondent to "comply in all respects with the May 28, 2020 Subpoena" by producing all requested documents by August 27, 2021, and by personally appearing before the Division to provide testimony by October 26, 2021.  Order, July 23, 2021, at 2 [ECF # 9] ("July 23 Order"). The July 23 Order also specifically advised Respondent that "any failure to comply with this Order may result in him being held in contempt of court." *Id.* at 3.  The Division served Respondent with a copy of the July 23 Order.  *See* Notice of Service, Ex. 1 [ECF # 10-1].

On October 25, 2021, the Division submitted a motion asking the Court to hold Respondent in contempt for failing to obey the July 23 Order.  On November 5, 2021, the Court issued a show cause order commanding Respondent to "show cause by written submission why he should not be held in civil contempt for failing to comply with the Court's July 23 Order" by December 5, 2021. Order to Show Cause, Nov. 5, 2021, at 2 [ECF No. 12].  The Court further specifically warned Respondent that, if he "fail[ed] to show cause by the date set out above, the Court w[ould] find him in civil contempt and impose whatever penalties it deems appropriate in order to effectuate compliance with its July 23 Order." *Id.*  Despite the Court's warning, Respondent failed to comply with the Subpoena or show cause by the December 5, 2021.

### E. The Contempt Order

On December 9, 2021, the Court held Respondent in contempt of Court.  *See* Memorandum Opinion & Order [ECF # 14] (the "Contempt Order").  The Court found that Respondent was in contempt because he had "taken no steps either to produce the required documents or to give testimony to the Commission" and the Commission showed "by clear and convincing evidence that Respondent has failed to comply with a clear and unambiguous order of this Court." *Id.* at 4. The Court imposed a per diem fine of $100 for every day that Respondent remains in contempt, effective fourteen days after Respondent was served with a copy of the Contempt Order. *Id.* at 6.

The Court also stated that if after twenty-eight days of per diem fines Respondent remains in contempt, "the Court will issue a warrant for his arrest and imprisonment." *Id.* The "confinement will be *in addition* to the continued accrual of per diem fines, but, like the fines, Mr. Wonsey's incarceration will cease the moment he complies with the Court's Order." *Id.* at 7 (emphasis in original). The Division served Respondent with the Contempt Order on December 13, 2021. Notice of Service [ECF # 15].

Although he was personally served with the aforementioned papers, Respondent did not make any effort to contact the Division. On January 5, 2022, the Division sent an email to Respondent attaching a copy of the Contempt Order. The Division advised Respondent that he was in contempt of court, and asked that he comply with the Subpoena. In response, Respondent claimed that he previously sent documents to an investigator from the Florida Bureau of Investigations. The Division advised Respondent that the Commission is not affiliated with the Florida Bureau of Investigations, the Commission's Subpoena is distinct, and he has an independent obligation to comply with the Subpoena. *See* Status Report, Jan. 11, 2022 [ECF # 16]. Respondent promised to produce documents several times in January 2022, but failed to follow through. *See* Status Report, Jan. 25, 2022 [ECF # 18]. Finally, on January 28, 2022—20 months after he was served with the Subpoena and 50 days after being held in contempt—Respondent produced some documents to the Division.

**F.  Respondent's Deficient and Incomplete Response to the Subpoena**

Respondent produced 109 documents in response to the Subpoena. The production contained: (1) OneBell bank statements (forty-one); (2) OneBell brokerage account statements (forty-six); (3) one cryptocurrentcy transaction report; and (4) OneBell customer investment contracts (twenty-one). As the Court recognized, these documents "represent only partial compliance with the subpoena's terms." Order, Mar. 7, 2022 [ECF # 22]. On February 9, 2022,

the Division sent Respondent an email clearly identifying the ways that his production was incomplete and deficient. Status Report, Feb. 11, 2022 and Ex. 1 thereto [ECF # 20]. The Division requested that Respondent cure the deficiencies by February 16, 2022. In addition, the email advised Respondent that he should provide an affidavit certifying the completeness of his production and for any document that has been lost, misplaced, destroyed, or is otherwise unavailable, he must set forth an explanation regarding why it is not available. Respondent replied confirming receipt of the Division's email and he made a vague statement that his email service lapsed and he would check to see what was "saved in the cloud." *Id.* at Ex. 1. **Respondent's January 28, 2022 production was deficient and failed to respond to the Subpoena in critical ways, including:**

1. **Respondent failed to produce complete client information for OneBell.**

The production of OneBell customer information is deficient in numerous ways. First, Respondent did not produce a list of all clients of OneBell, as required by the Subpoena. Second, the production does not include documents for all of OneBell's clients. Specifically, the Division is aware of *at least* nine clients of OneBell for whom Respondent did not produce any documents. Third, Respondent's production does not include any communications with clients (e.g., emails, text messages, account statements, etc.). The Division's investigation has uncovered information that suggests that Respondent communicated with clients of OneBell through some or all of these means. Fourth, the production does not contain documents related to payments made from OneBell to its clients.

2. **Respondent failed to produce a single promotional material for OneBell.**

The production does not contain any promotional materials that were used to solicit clients for OneBell. The Division has acquired information that suggests that responsive documents exist, including evidence that Respondent used social media accounts (e.g., Facebook) to market his

7

businesses and interact with potential clients. The Division has also learned that Respondent may have showed clients information about OneBell as part of his interactions to solicit their investments.

   3. **Respondent did not produce a single document concerning TradeDow.**

The Division's investigation has uncovered information that suggests that TradeDow has responsive documents. For example, TradeDow's website indicates that TradeDow had clients. *See* Ex. D to Appl. for Order to Show Cause [ECF # 1-6]. The website says "more than 1,000+ users are using TradeDow," claims TradeDow has "helped our clients earn up to 20% in profits a month on average," and contains a testimonial from a client who claims she has made "thousands of dollars in profit" using TradeDow. It indicates that TradeDow sent daily communications to its clients and provides a company email address (info@tradedow.com). Documents and information identifying TradeDow's clients and its communications with those clients are responsive to the Subpoena. The Division also learned that TradeDow had a Facebook page that it used to communicate with and solicit clients. Documents and communications related to TradeDow's Facebook or other social media accounts should be produced in response to the Subpoena. The Division has independently obtained statements for a bank account maintained by TradeDow from October 30, 2018 to June 30, 2021. While the Division is not asking Respondent to re-produce these bank statements, their existence is further evidence that responsive documents exist for TradeDow that have not been produced.

   4. **Respondent did not identify all bank and trading accounts.**

Respondent produced documents related to a single bank account and a single trading account for OneBell. However, the Division is aware of *at least* 7 bank accounts and 12 trading accounts belonging to Respondent, OneBell, or TradeDow. The Division has been able to independently obtain records for these accounts and does not need Respondent to re-produce these

records. However, Respondent must, as required by the Subpoena, provide a complete list identifying all bank and trading accounts that he, OneBell, or TradeDow maintained. This information is critical and will allow the Division to confirm that it has all relevant records.

5. **Respondent produced no documents related to the corporate formation or scope of business of OneBell.**

The Subpoena requested that OneBell produce all documents related to its formation, incorporation, or scope of business, including any articles of association, bylaws, charters, operating agreements, or business plans. OneBell did not produce any of these documents.[2]

### G. The Request for an Arrest Warrant

On March 4, 2022, the Division filed a Notice of Request for Issuance of an Arrest Warrant. *See* Request for Issuance of Arrest Warrant [ECF # 21]. The Division requested that the Court order Respondent "be detained until he produces all of the outstanding documents, or provides an affidavit explaining why he is unable to produce any of these documents." *Id.* at 3. The Court set an in-person hearing on April 18, 2022 at 2:00 pm EDT to provide Respondent with an opportunity to attempt to show good faith substantial compliance with the Subpoena. Order, Mar. 7, 2022, at 3 [ECF # 22]. On March 9, 2022, the Division had Respondent personally served with a copy of the March 7 Order.

## ARGUMENT

### A. Respondent Cannot to Show Good Faith Substantial Compliance.

Respondent cannot show good faith substantial compliance with the Contempt Order or the Subpoena. "[T]he burden of proving good faith and substantial compliance is on the party

---

[2] The Court also ordered Respondent to arrange "in good faith a time in the near future for his personal appearance and testimony before the Commission." Contempt Order, at 8; *see also* July 23 Order at 2. Respondent's failure to produce documents required by the Subpoena has put the Division in a position where any testimony would be incomplete. Respondent must promptly produce the missing documents and then provide dates when he is available to be questioned after the production is complete.

9

asserting the defense." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1017 (D.C. Cir. 1997). To meet this standard, a party must show that he took "all reasonable steps within [his] power to comply with the court's order." *Id.*; *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 34 (D.D.C. 2014). Assertions of substantial compliance are insufficient; rather, a substantial compliance justification "must be accompanied by adequate detailed proof." *Latney's Funeral Home*, 41 F. Supp. 3d at 34-35.[3]

Courts in this Circuit have rejected claims of substantial compliance where, as is the case here, a party has produced some, but not all, responsive documents by the Court imposed deadline. *See, e.g.*, *Food Lion*, 103 F.3d 1019 (rejecting good faith substantial compliance defense where public relations firm produced some, but not all, responsive documents by the court imposed deadline); *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 22, 27 (D.D.C. 2015) (rejecting good faith substantial compliance defense where party "knew of the existence of the intercompany e-mails, . . . website data, potential responsive documents stored in the companies' storage facilities . . . as well as their bank records, and yet failed to comply"); *see also In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436, at *4 (D.D.C. Apr. 10, 2019) (avoiding spoliation of subpoenaed documents, but failing to produce those documents, is insufficient to demonstrate substantial compliance).

Here, Respondent has failed to show that he has taken reasonable steps to comply with the Court's Contempt Order requiring him to produce *all* documents requested by the Subpoena. The Division made Respondent aware of the deficiencies outlined above on February 9, 2022. Since

---

[3] Moreover, a party claiming inability to comply must demonstrate such inability "categorically and in detail." *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 40 (D.D.C. 2010).

then, Respondent does not appear to have taken any steps "to remedy the deficiencies in that production or even engage in good faith dialogue with the Commission." Order, Mar. 7, 2022, at 2 [ECF # 22]. The documents are limited to certain distinct categories which the Division has clearly identified for Respondent to help facilitate his compliance. Respondent has not identified any extenuating circumstances that have prevented him from making good faith efforts at compliance. And, as the Division has advised Respondent, if certain documents are no longer available, he must provide an affidavit explaining why he is unable to produce those documents.

**B. Respondent's Recently Raised Objections are Untimely and Without Merit.**

Following the Division's request for issuance of an arrest warrant, Respondent emailed the Division and asserted that the Subpoena is invalid, unconstitutional, and stated that he will "decline from any further cooperation" and invoke his Fifth Amendment privilege against self-incrimination. He requested that the Court to "[o]rder a Dismissal" of the Subpoena and the Contempt Order. Ex. 1 to Mar 7, 2022 Status Report, at 2 [ECF # 23]. These arguments are untimely and without merit.

First, as the Court recognized, "Wonsey may not refuse to comply with a subpoena based on his own conclusion (rather than the Court's) that it is unconstitutional." Order, Mar. 9, 2022, at 2 [ECF # 24]. The Court has already held that the subpoena is valid and enforceable.

Second, Respondent's "never-before-raised legal arguments" are untimely. *See id.* He was required by the Court on multiple occasions to make any objections to the validity of the subpoena, yet he never raised any objections.[4] Indeed, Respondent partially responded to the subpoena

---

[4] *See* Order, June 4, 2021 [ECF No. 6] at 2 (ordering Wonsey to "show cause why the Court should not compel him to comply with the Commission's administrative subpoena" and giving him one month after service of that order to do so); Order to Show Cause, Nov. 5, 2021 [ECF No. 12] at 2 (ordering Wonsey to "show cause by written submission why he should not be held in civil contempt" and giving him one month in which to do so (cleaned up)).

11

without raising any of these objections. Hence, his untimely objections appear to be nothing more than another effort to disregard the Court's Contempt Order and delay the Division's investigation.

Third, Respondent's assertion of the Fifth Amendment—even if it was timely—is invalid. The outstanding documents are business records of OneBell and TradeDow. OneBell and TradeDow do not have a Fifth Amendment privilege. *See United States v. White*, 322 U.S. 694, 699 (1944) ("Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation."); *Thorp v. D.C.*, 317 F. Supp. 3d 74, 85 (D.D.C. 2018) (Fifth Amendment "gives no protection to corporations or their officers against the production" of records). Moreover, Respondent "cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *S.E.C. v. Bankers All. Corp.*, 881 F. Supp. 673, 681 n.5 (D.D.C. 1995), *on reconsideration in part*, No. C.A. 95-0428 (PLF), 1995 WL 590665 (D.D.C. May 5, 1995).[5]

## CONCLUSION

For the foregoing reasons, the Court should promptly issue a warrant for Respondent's arrest, and order him to be detained until he produces all of the outstanding documents, or provides an affidavit explaining why he is unable to produce any of these documents.

Dated: April 8, 2022:          Respectfully submitted,

/s/ Alison B. Wilson

---

[5] Further, Respondent's mere assertion of a personal (as opposed to corporate) Fifth Amendment privilege is insufficient. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818, 95 L. Ed. 1118 (1951) ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."). This is a civil, not a criminal, investigation. Moreover, the existence of the documents in question is a "foregone conclusion" and their production is not testimonial. *See Fisher v. United States*, 425 U.S. 391, 411, 96 S. Ct. 1569, 1581, 48 L. Ed. 2d 39 (1976).

        Alison B. Wilson (DC Bar No. 475992)
        Sean P. Hennessy (DC Bar No. 1011564)
        COMMODITY FUTURES TRADING COMMISSION
        1155 21st Street, N.W.
        Washington, D.C. 20581
        awilson@cftc.gov
        O: (202) 418-5568

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2022, I electronically filed the foregoing using the CM/ECF filing system. I also hereby certify that on the same day a copy of the foregoing was sent by email to the Respondent and mailed to his last known address: 9070 Pinebreeze Drive, Riverview, FL 33578-8861.

Respectfully submitted,

/s/ Alison B. Wilson
Alison B. Wilson (DC Bar No. 475992)
COMMODITY FUTURES TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
awilson@cftc.gov
O: (202) 418-5568